Good morning, Your Honors. May it please the Court, my name is Harvey P. Sackett. I represent Emanuel J. Valenzuela, plaintiff appellant in this matter. I wish to reserve two minutes for rebuttal. You may do so. Just watch the clock. Thank you, Your Honor. Valenzuela raised four issues in his opening brief. This morning, I'd like to focus on one of those issues, namely, the Administrative Law Judge's finding at Step 5 of the sequential evaluation process, where he concluded that Valenzuela could perform other occupations. Valenzuela submits that there are three separate and distinct outcome-determinative errors, each mandating remand. First, the Administrative Law Judge's vocational finding is not supported by substantial evidence. In Misaci v. Astrue, this Court recently stated that the requirements of Social Security Ruling 004P mandate that an ALJ may not rely on the testimony of a vocational expert regarding the requirements of a particular job without first inquiring if the expert's testimony conflicts with the DOT. This inquiry acts as a prerequisite to finding that vocational testimony is supported by substantial evidence. And importantly, Misaci states that this mandate exists even if there isn't a stated conflict. But is there, in fact, a conflict in this case? There is, Your Honor. There is a conflict in this case. And what is it? The conflict is that, first, with respect to the beauty supply occupation, the vocational expert testified that Valenzuela's past relevant work as a cosmopologist required him to make sales and handle money. The record doesn't support that, nor does the DOT. There was no testimony from Valenzuela that he handled money. There's no written documentation whatsoever in the record that he handled money. The only form that he completed describing his work simply said that he cut, styled, and colored hair. There's absolutely no reference whatsoever to making sales or handling money. Likewise, the Dictionary of Occupational Titles gives a very lengthy description of what's involved as a cosmetologist. There's absolutely no reference whatsoever to handling money or making sales. So even if that were not the case, even if we didn't have the conflict, Misaci still says that the ALJ must voir dire the V.E. as to whether or not a conflict exists. In this case, number one, he didn't voir dire the V.E., and, number two, we do indeed have a conflict. Well, what – all right. I'm having some trouble because it would appear that, at least on the surface, that there was no real conflict. I mean, there might have been some terminology differentiation here, but what's the guts of the conflict here? What's your principal concern? Insofar as how he did his past relevant work, the vocational expert said that, I believe that this gentleman could go out and do a different job. He could go out and do outside beauty supply sales. And the reason why he could do this is because in his former job as a cosmetologist, he handled money and he sold products to his customers. The record doesn't support that whatsoever. There's a complete absence of that. That's why I think the conflict's very clear. And, again, I want to underscore the point, Your Honor, that even if it were a fuzzy issue, and it's not, the fact of the matter is Misagi says that the ALJ still had to say to the V.E., is your testimony consistent with the DOT? And he failed to do so. And he did the – was the vocational  what Valenzuela said was his limitations? Yes, Your Honor. And whether there would be a job in the national economy if those were assumed? Yes, Judge Hawkins. And what did he say? She said that if we assume the truth of Valenzuela's testimony, Mr. Valenzuela could neither perform the two occupations that she first suggested, nor could he do anything else. Now, the disability in this particular case is the carpal tunnel syndrome. Primarily perhaps also hepatitis C. That's correct, Your Honor. Which is the dominant concern here? As developed by Mr. Valenzuela's former counsel at the administrative level on appeal, it was primarily the carpal tunnel syndrome and secondarily the hepatitis. I want to stress to the Court what is clear in my briefs. I'm not suggesting on this record that Mr. Valenzuela should be found disabled. Much of my brief and my argument this morning is devoted to what I see as the technical or procedural flaws in the case. So we're seeking remand. We're not suggesting to the Court, given this record, he should be found disabled. We're simply saying that there were procedural defects, especially at step five, absent even considering the lack of counsel, that warrant a remand. But do you also believe that if there were a remand, that the outcome would be different? I do, Your Honor, for a number of reasons. And if you'd like me to address those, I'd be happy to. Okay. I would. Thank you. In part, that ties into the second issue I want to raise to the Court this morning, the ALJ's failure to develop the record. We have a scintilla of evidence, but not substantial evidence, as to when Valenzuela actually did this work as a cosmetologist. There were two hearings. In the first hearing he said, I think I did it in 86 or 87. In the second hearing he said, I think I did it in 85 or 86. The ALJ said, well, you told me 87 the first time around. I'm just writing down 87. There's no evidence in the record to support that. The ALJ had several options. Now, is this significant with respect to the 15 years? It's extremely significant, Your Honor, because the administrative decision by the judge was rendered in December of 2001. If, in fact, Valenzuela did this work any time before December of 1986, it's not past relevant work. If it's not past relevant work, the V.E. never could have said that he could do outside beauty sales or light delivery. So it changes the landscape completely. Well, whose responsibility is it to testify accurately as to that date? Your Honor, it's the ALJ's responsibility to develop the record. This is a fundamental question in the sequential evaluation process, determining what constitutes a claimant's past relevant work, with or without the presence of counsel. And the ALJ had many options to him. He could have taken a simple five-minute recess, literally pushed a button and gotten an earnings record, gone back on the record and said, Mr. Valenzuela, I've got your earnings record here, and apparently you did do it in 86 or 87. He could have then proceeded from there. He didn't do it. He could have also said to Mr. Valenzuela, Mr. Valenzuela, you may not know this or not, given that you're unrepresented, but this 15-year issue is critical. I'd like you to provide to me your W-2 forms or tax returns, because depending on what that shows us, that may impact the outcome of your case. And he didn't do that. So to answer your question, it's the same. I respectfully reserve the balance of my time. Roberts. You may do so, counsel. Thank you, Your Honors. We'll hear from the Commissioner. Good morning, Your Honors. Nancy Lachefsky for the Commissioner of Social Security. Lachefsky. In this case, as Mr. Valenzuela is arguing that Misace controls in this case, the Misace case also says Counsel, could I ask you to speak a little closer to the microphone, please? Thank you. The Misace case also says that not inquiring could have been harmless where there was no conflict. And the Commissioner submits that in this case, there was no conflict, because the V.E. testified that the cosmetologist, a cosmetologist generally become familiar with colors and solutions. There's no argument that that's not the case. And she also states that the cosmetologist can handle sales or take payments from customers. Now, in this case, when you look at the DOT, it states that a cosmetologist needs to do math level 3, which involves computing discounts, interest, profit and loss, commission, markup and selling price. The Commissioner submits that there's no deviation from the DOT. Wait a second. There's a difference between calculations in one's head and handling money and physically handling transactions. I agree, Your Honor. I also think that the Commissioner also submits that in this case, it suggests that the cosmetologist needs to have some mathematical skills to be involved in sales, and also just as a common sense level. Well, yeah, if you talk about common sense level, I mean, I frequent beauty stores, and the cosmetologist or the hairdresser doesn't necessarily handle money at all. And in times they do. Actually, the ones I go to, they don't. I mean, they really don't. Okay. They have separate people who do that. So I'm just saying from a common sense perspective, and if you read the definition, there may, in fact, be a conflict. Well, in this case, we believe that there's enough evidence here that the cosmetologist can have that sales background. And in addition, Mr. Valenzuela is arguing that the 15 years issue is dispositive. And even if the Mr. Valenzuela last worked as a cosmetologist in 1985, that means that would be in 16 years from the date of the ALJ's decision. And as the district court noted, the 15 years is a guideline. There's nothing to suggest that all of Mr. Valenzuela's skills would dissipate over that extra year. In addition, there are various references in the record. For example, Mr. Valenzuela reported to his physical therapist in 2001 that he last worked as a hairdresser for three years before. So that would be 1999. So in this case, we're arguing that the ALJ did not. His determination that Mr. Valenzuela last worked as a hairdresser in 1987 is supportable. Do you disagree with opposing counsel's statement that this would have been easy to determine, easy to determine from factual records within the immediate reach of the ALJ? To be honest, I'm not sure. That being said, I don't think the ALJ was out of line in relying on Mr. Valenzuela's testimony. Mr. Valenzuela said sometime between 1985 and 1987 over the course of two different hearings. The ALJ said 1987. You said that the first time. I'm going to go with it. Let me ask you a question about something that troubles me about the record in this case, and hopefully you could help me through it. The ALJ determined that Valenzuela was credible as to his subjective pain, but not its severity. Is that correct? Yes, Your Honor. And his major reason for coming to the latter conclusion, that is, that although he felt that Valenzuela was experiencing pain, it was not nearly as severe as Valenzuela described it, was that he was taking a very low form of medication, a less severe form of medication. Is that correct? Well, that was one of three reasons. Okay. Well, let's explore that just for a second. You can tell me what the others were. Isn't it correct that Valenzuela explained that he could not take a more sustained, severe form of medication because of his hepatitis? I'm sorry. I didn't hear the last. Isn't it correct that Valenzuela testified he could not take a stronger form of medication because of his hepatitis? Your Honor, I think that's correct. Can I have a yes or no? Yes. That was his testimony. I believe they were correct. Did the ALJ offer anything in response to that? No, Your Honor. But the ALJ did point out two other reasons why he discounted Mr. Valenzuela's credibility. And what were they? The first was that Mr. Valenzuela was the primary caretaker for his child. And the second. Let's stop with that one. Wasn't he just dead wrong in his description of that, the ALJ? Didn't the ALJ say, well, Valenzuela told me he could bathe and dress his son, do housework, cook a light dinner, and cut his hair, yet claimed his carpal tunnel was disabling? Isn't it correct that what Valenzuela actually said was that he tried to do that and each of those things and experienced so much pain he couldn't repeat them? I believe that Mr. Valenzuela. Isn't that his testimony? That is his testimony. The ALJ, however. Well, in that regard, we're now to number two on the justification. Did the ALJ misstate Valenzuela's testimony? I don't believe he misstated Valenzuela's testimony. Well, how could he not have misstated it if he says the man told me he could do all of these things and I don't see how he could do them without pain when the actual testimony was that the man tried to do them and couldn't without severe pain? Well, Your Honor. How could those two things not be inconsistent? I believe they're not inconsistent because the ALJ went on to explain that while Mr. Valenzuela was making these various statements about his pain, he was in fact taking care of his child, and there was not a mother in the picture, so somehow or other the child was being taken care of. But that's not what he said. He cranked off a list of things. He could bathe and dress his son, do housework, cook a light dinner, and cut his to. Okay. You're going to give us a third one. The third one was that there was no sign of muscle atrophy in Mr. Valenzuela. Is the ALJ a doctor? No, but the ALJ both looked at the medical records and also had the Mr. Valenzuela in front of him in the two hearings in 2001. Was there medical testimony on this point? No, Your Honor. What was the ALJ relying on? I believe he was relying on looking his analysis of the medical records, which and also on Mr. Valenzuela. Well, let's suppose that the medical records are silent on the issue of muscle atrophy. Was there any medical testimony or evidence or learned treatises that would suggest that the absence of atrophy means there cannot be severe carpal tunnel syndrome? Well, in this case the answer to that is no. Isn't it? The answer to that is no. However, this Court in Menil v. Apfel did notice that the absence of muscular atrophy is a proper consideration when considering a claimant's. That would be great if there was anything in the record, but there's not, correct? I believe that there's you're right. Thank you. What should we do? Should we remand it or reverse it? I believe that, as Mr. Sackett stated, if you determine that this case is something that you want to remand or reverse, it should be remanded because there simply isn't a particularly developed record to find that Mr. Valenzuela was disabled. However --" Isn't that like saying the ALJ did a bad job, didn't do its job, and said we're going to give him a second chance to do its job? I believe, Your Honor, in this case the ALJ did a fine job, and various laws and such have changed over the course of the last few years. And if you determine that the ALJ's job at this point was not sufficient, there would be a fine reason to reverse it. You say reverse? To remand. To remand, yes. And on remand, what do you expect would happen? It would be further hearing, further development of the record. Anything further, counsel? No, Your Honor. Thank you. Thank you. Mr. Sackett, you have some reserved time. Thank you, Your Honor. Three points. First, with respect to what the remedy might be, to the extent that I did argue that the main focus for Mr. Valenzuela was to seek a remand, we have a body of case law, Beneke and Redick and others, that state that if, in fact, sending the case back for remand is fruitless, then we're putting off the inevitable, and I'm paraphrasing, the case should be remanded for the immediate payment of benefits. Getting back to Judge Hawkins' question about the second hyphen. Well, that's not what you were asking in your initial eight minutes. I understood, Your Honor. I understood. And I don't want to appear like I'm performing a flip-flop. I'm really clarifying my position. Okay. My point was that most fundamentally, the case clearly requires a remand. And apparently, opposing counsel tends to agree with you. And what would you expect on remand, given the focus on this particular area where there may not have been full development of the record? Okay. Several things. At this point, regardless of whether it's 85 or 86, we're clearly beyond 15 years. But let's assume that I can prove at a third hearing that it was not done within 15 years of 1987. He has no past relevant work. Therefore, the commissioner's burden of proof is that much greater. I'm not a vocational expert, but I would submit that a vocational expert would not be able to find alternate occupations given his limitation to only using his hands on an occasional basis. If, in fact, we also talk about the acceptance of his subjective complaints, as Judge Hawkins asked about the nothing this man can do. That's why he'd have to be found disabled. All right. Thank you, counsel. Thank you, Your Honors. The case just argued will be submitted for decision.
judges: O'scannlain, Hawkins, Wardlaw